IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DOUGLAS LEE TODD                                                   PLAINTIFF

v.                          Civil No. 07-5060

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                    DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Douglas Todd, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his application for DIB on September 9, 2004, alleging an onset date of July 7, 2003, due status post three back surgeries, status post bilateral carpal tunnel release surgery, and obesity. (Tr. 16). His application was initially denied and that denial was upheld upon reconsideration. (Tr. 37-46). An administrative hearing was held on June 14, 2006. (Tr. 35, 188-206).

At this time, plaintiff was 36 years of age and possessed a high school education. (Tr. 376). He had past relevant work ("PRW") as a construction worker, delivery driver, working yard foreman, and farm laborer. (Tr. 379-380, 384).

On October 12, 2006, the Administrative Law Judge ("ALJ") concluded that plaintiff was disabled from September 1, 2003, through April 12, 2005. However, as of April 13, 2005, the ALJ determined that plaintiff's condition had improved. Although plaintiff continued to have a combination of severe impairments, his impairments no longer met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4, due to medical improvement. (Tr. 19). After partially discrediting plaintiff's subjective complaints, as of April 13, 2005, the ALJ determined that plaintiff retained the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk, 6 hours during an 8-hour workday; occasionally climb, bend, twist, crouch, kneel, or balance; and, never climb ladders, ropes, or scaffolds. Further, due to his obesity, the ALJ also concluded that plaintiff would require a sit/stand option allowing him to switch positions after 45 minutes of a continuous single activity. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform work as a service dispatcher, machine tenderer, and cashier II. (Tr. 21).

Plaintiff appealed this partially favorable decision to the Appeals Council, but said request for review was denied on November 14, 2006. (Tr. 6-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 8, 9).

II.   **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining

2

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A.    **The Evaluation Process**:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A),

3

1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.   <u>Evidence Presented</u>:

On September 3, 2003, plaintiff presented at the emergency room complaining of back pain.  (Tr. 300-302).  An examination revealed a decreased range of motion and muscle spasm in the lumbar spine.  Plaintiff indicated that he had injured his back while lifting at work.  (Tr. 284, 301).  X-rays revealed partial sacralization of the L5 and minor multilevel degenerative changes.  (Tr. 110, 302).  There was slight spur formation at the L3 and L4, but the disk spaces were well preserved and no bony destructive lesions were noted.  (Tr. 110).

4

On September 25, 2003, Dr. James Arkins noted no significant improvement. (Tr. 113). Plaintiff was still walking with a guarded gait and had marked lower lumbar pain and discomfort on the right side. An exam revealed tenderness over the facets in that area as well. Dr. Arkins prescribed Vioxx, a Medrol Dose Pack, Skelaxin, and Vicodin. (Tr. 113).

On September 29, 2003, Dr. Arkins indicated that plaintiff had been seen in follow-up for lower back pain that radiated down his right leg. (Tr. 111). A physical exam had revealed persistent paravertebral muscle spasm in the lower lumbar with guarding on straight leg raising and a limited range of motion in the back. An MRI confirmed the presence of a bulging disk, as well as a right paracentral disk herniation and central canal stenosis. Dr. Arkins diagnosed plaintiff with myofascial syndrome of the back secondary to a bulging and herniated disk in the lumbar spine, as well as canal stenosis. He prescribed Vioxx, Skelaxin, and Vicodin. Dr. Arkins stated that plaintiff could return to modified work duty but could not lift over 10 pounds or repetitive lift or push/pull over 25 pounds. Plaintiff was also referred to a neurosurgeon for consultation. (Tr. 111). From October 2003 until November 24, 2003, plaintiff was treated via physical therapy. (Tr. 200-227).

On December 8, 2003, x-rays continued to show sacralization of the L5 and minimal degenerative changes of the upper plates of the L3 and L4, with no improvement. (Tr. 293). Therefore, on December 18, 2003, plaintiff underwent a right L5-S1 microdiscectomy. (Tr. 283-287). Dr. Martin Greenberg performed the procedure and reported an uneventful surgery. Postoperatively, Dr. Martin noted that plaintiff's right S1 radiculopathy had improved. Plaintiff was reportedly up and ambulating. Dr. Greenberg prescribed Mepergan Forte, Celebrex, and Soma. Plaintiff was also directed to follow-up in two weeks. (Tr. 283).

Between February 5, 2004, and April 30, 2004, plaintiff again participated in physical therapy. (Tr. 155-196). Plaintiff's wife testified that plaintiff was given permission to return to work in February 2004. (Tr. 405). However, he worked for only 30 days before rupturing another disk in his back. (Tr. 405).

On March 30, 2004, an x-ray of plaintiff's lumbar spine revealed a congenital variant of partial sacralization of the L5 segment and some disk generation apparent at the L4-5 level. (Tr. 277). On April 1, 2004, plaintiff underwent L5-S1 level posterior lumbar interbody fusion ("PLIF") with instrumentation, due to a right L-5-S1 level herniated nucleus pulposus, postlaminectomy syndrome, and L5-S1 instability . (Tr. 263-271). Dr. Greenberg reported that the surgery and hospital course were uneventful. Later that day, plaintiff was noted to be up and ambulating with an abdominal binder. (Tr. 263).

From June 2004 through September 9, 2004, plaintiff underwent physical therapy. (Tr. 117-151). His lowest pain rating during this time frame was a 5/10, which was reported on only two or three occasions. (Tr. 117-151).

On July 12, 2004, plaintiff reported continued problems with intermittent, persistent lower back pain; intermittent right L5 radiculopathy; and, persistent right foot weakness. (Tr. 343). Dr. Greenberg noted a positive straight leg raise on he right side, right-sided dorsiflexor weakness, decreased pinprick sensation at the right L5 distribution, and trace right antalgic gait. He ordered an MRI and prescribed Mepergan Fortis, Celebrex, and Soma. (Tr. 343). The MRI of plaintiff's lumbar spine revealed persistent spinal stenosis above the L4-5 level with central disc herniation at the L4-5. (Tr. 344). In light of the persistent right L5 radiculopathy, which

6

had not responded to physical therapy, Dr. Greenberg recommended that plaintiff undergo a third surgical procedure.  (Tr. 344).

On July 21, 2004, x-rays revealed "suspicious appearing postoperative changes" at the L4-5 level.  (Tr. 261).  On July 27, 2004, plaintiff underwent posterolateral interbody fusion at the L4-5 level.  (Tr. 250- 257).  Dr. Greenberg noted that the procedure was uneventful.  (Tr. 250).

On August 11, 2004, plaintiff returned for a follow-up.  Dr. Greenberg noted a light subcutaneous hematoma with drainage, but no infection.  (Tr. 341).  Plaintiff's sensory exam continued to show decreased response to light touch and pin prick at the right L5 distribution, and plaintiff continued to report lower back pain and L5 radiculopathy, greater on the right than left, which was slowly and steadily improving.  Dr. Greenberg prescribed physical therapy, Mepergan Fortis, Celebrex, and Soma.  (Tr. 341).

On September 8, 2004, plaintiff complained of bilateral hand numbness with tingling. (Tr. 339).  Dr. Greenberg noted that plaintiff was finishing the prescribed physical therapy for his back, but continued to have a residual right monoparetic gait.  An examination revealed sciatic notch pain bilaterally, a questionably positive Tinel's sign in the right wrist, and sightly decreased pinprick sensation in the right median nerve distribution and the right L5 distribution. Dr. Greenberg diagnosed plaintiff with new onset progressive bilateral hand numbness with tingling and prescribed a cock-up splint.  He noted that x-rays of plaintiff's lumbar spine showed solid instrumentation, alignment, and fusion at the L4-5, L5-S1, lumbarized sacrum, S1, and S2. Dr. Greenberg advised plaintiff to continue physical therapy at home and continue walking

7

therapy, including the treadmill.  He then prescribed Vicodin Extra Strength, Celebrex, and Soma. (Tr. 339).

On October 8, 2004, plaintiff complained of persistent bilateral hand numbness with tingling. (Tr. 337).  He reported intermittent nocturnal pain and nocturnal paresthesias.  His right leg monoparesis was improving slowly postoperatively and plaintiff was able to walk on a treadmill ½ mile per day.  Dr. Greenberg indicated that plaintiff's examination revealed slightly decreased pinprick sensation at the L5 distribution and questionable decreased pinprick sensation at the median nerve distribution.  However, x-rays were normal.  (Tr. 338).  Plaintiff's gait was trace right monoparetic and his wrists and elbows had positive Tinel's sign tests. [1] (Tr. 337).  Dr. Greenberg advised plaintiff to continue walking therapy and prescribed Vicodin, Celebrex, and Soma.  He also noted new onset bilateral hand numbness with postoperative tingling.  Dr. Greenberg ordered nerve conduction studies to rule out double crush syndrome and carpal tunnel syndrome.  He also prescribed a cock-up splint.  Dr. Greenberg indicated that plaintiff might also be suffering from concomitant spinal stenosis of the cervical spine, which could also account for symptoms in his hands.  (Tr. 337).

X-rays of plaintiff's lumbar spine dated December 22, 2004, revealed normal appearing anterior disk fusions at the L4-5 and L5-S1 levels.  (Tr. 240).  Alignment was normal and there was no evidence of a fracture line, destructive lesions, foreign bodies, or other bony or soft tissue changes.  (Tr. 240).

---

[1] Tinel's sign is a test that is used to detect irritated nerves.  *See* Tinel's Sign, *at* www.medterms.com. In patients with carpal tunnel syndrome, the test is usually positive, causing a tingling sensation in the thumb, index, and middle fingers.  *Id.*

8

On December 23, 2004, Dr. Martin Greenberg performed bilateral carpal tunnel release surgery. (Tr. 229-239). Following surgery, Dr. Greenberg noted that plaintiff was able to wiggle his fingers. (Tr. 229).

On February 9, 2005, plaintiff was evaluated by Dr. Anthony Capocelli regarding his worker's compensation claim. (Tr. 330-331). Plaintiff reported severe lower back pain, as well as pain radiating into the hip region. He complained of some spasms and pain in the right leg at times, in addition to anterior thigh numbness and burning sensations. Any activity was reported to exacerbate his pain. Multiple x-rays showed good position of the fusion mass with no obvious failure. Dr. Capocelli performed a comprehensive physical examination which revealed some patchy decreased pinprick sensation in the left anterior thigh and leg. Plaintiff also had a positive straight leg raise test on both sides and point tenderness over the lower back. His gait was normal, though he had some difficulty with heel-toe walking and seemed to favor the right side. Dr. Capocelli diagnosed plaintiff with post laminectomy syndrome, neuropathic pain syndrome, and rule out pseudoarthrosis. He was of the opinion that plaintiff should continue with physical therapy and definitive weight loss in the 40 to 50 pound range before really considering any further diagnostic work-up. Dr. Capocelli prescribed Neurontin, as plaintiff's pain was very characteristic of neuropathic pain, and advised that plaintiff be weaned off his narcotic pain medication. (Tr. 331).

On March 30, 2005, Dr. Greenberg prepared a report of plaintiff's progress to forward to Dr. Arkins. (Tr. 326-329). Dr. Greenberg stated that plaintiff was making slow and steady progress. Plaintiff's lower back pain and right-sided radiculopathy was improving slowly and steadily with time and physical therapy. He indicated that plaintiff's bilateral hand numbness

9

and tingling had resolved postoperatively.  On examination, Dr. Greenberg found bilateral sciatic notch pain, and absent deep tendon reflexes in the upper and lower right side with down turning toes on the right foot.  He advised plaintiff to continue home exercises and prescribed Darvocet, Mobic, and Soma.  Dr. Greenberg concluded that plaintiff had reached a level of maximum medical improvement with a 5% impairment for loss of the use of his hands and a 15% impairment to plaintiff's lower back, for a total body impairment rating of 20%.  (Tr. 326-327). X-rays taken on this date revealed minimal osteoarthritis in the bilateral sacroiliac ("SI") and hip joints.  (Tr. 328).

On April 12, 2005, plaintiff underwent a functional capacity evaluation ("FCE").  (Tr. 312-323).  The examiner determined that plaintiff could occasionally walk, balance, kneel, climb stairs, and carry up to 40 pounds.  Testing revealed that plaintiff could use his fingers for grasping and handling, as grip and pinch strength test results were normal.  (Tr. 318).  Results also showed that plaintiff's lumbar flexion, lumbar extension, and lumbar lateral flexion on the left and right were below normal range of motion values.  Plaintiff ambulated with a normal gait and arm swing, but was very guarded with movements involving his lumbar spine.  The examiner indicated that plaintiff could perform the heel-toe, retro, and side to side walk without difficulty.  (Tr. 320).  Plaintiff could not get down on the floor to complete the stooping task with lumbar flexion and had to use a table to balance himself during a crouch test.  (Tr. 322).  Further, he was also very guarded dropping down into a kneeling position, as well as coming back up from the floor.  (Tr. 322).  Plaintiff could go up and down stairs, but had a lot of pressure to hold his weight on the handrails.  (Tr. 323).  Dr. Greenberg reviewed the evaluation and determined

10

that plaintiff could perform work at the light physical demand level over the course of an 8-hour workday.  He prescribed Darvocet, Mobic, and Soma.  (Tr. 324).

On April 20, 2005, Dr. Greenberg filed an addendum noting that he had spoken with plaintiff's worker's compensation case manager and that plaintiff had elected to participate in vocational rehabilitation because he was unable to return to his previous job building bridges.  (Tr. 325).  He also indicated that plaintiff would require the use of Mobic and Darvocet N for the next 6 to 12 months.  (Tr. 325).

On May 6, 2005, Dr. Greenberg completed a history and diagnosis, as well as a physical RFC assessment, merely indicating that plaintiff could perform light physical demand work.  (Tr. 332-336).

On May 10, 2005, Dr. Capocelli indicated that he had seen plaintiff for a second opinion regarding his worker's compensation claim.  (Tr. 329).  He noted that plaintiff had undergone an FCE which revealed that he could perform light work.  Dr. Capocelli stated that plaintiff had not really followed the majority of his recommendations and continued to be on a significant amount of medications on a daily basis.  He indicated that plaintiff had not lost any weight or done any of the other activities he had recommended.  Therefore, he agreed with any plan to return plaintiff to the work duties as outlined in his FCE.  Due to plaintiff's noncompliance, Dr. Capocelli stated that he had nothing further to offer plaintiff.  (Tr. 329).

## IV.   **Discussion:**

Plaintiff contends that the ALJ erred in three ways.  First, he contends that the ALJ failed to consider all of his impairments in combination when she concluded that he had experienced medical improvement.  He also argues that the ALJ failed to adequately develop the record, and

11

committed reversible legal error when she allowed the testimony of the vocational expert to serve

as substantial evidence.

A.    **Subjective Complaints**:

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was

required to consider all the evidence relating to plaintiff's subjective complaints including

evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration,

frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage,

effectiveness, and side effects of his medication; and (5) functional restrictions.  *See Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's

subjective complaints solely because the medical evidence fails to support them, an ALJ may

discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  As the

United States Court of Appeals for the Eighth Circuit  recently observed, "Our touchstone is that

[a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314

F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set

forth in *Polaski*, and conclude there is substantial evidence supporting her determination that

plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as

the medical evidence contained in the record are inconsistent with plaintiff's allegations of

disability.

The record reflects that plaintiff underwent 3 separate surgical procedures to his back

between September 2003 and July 2004.  He then underwent bilateral carpal tunnel release

surgery in December 2004.  In March 2005, plaintiff's treating doctor, Dr. Greenberg, stated that

plaintiff had reached a level of maximum medical improvement.  His lower back pain and right-sided radiculopathy was improving slowly and steadily with time and physical therapy.  Dr. Greenberg also indicated that plaintiff's bilateral hand numbness and tingling had resolved postoperatively.  An examination revealed only bilateral sciatic notch pain and absent deep tendon reflexes in the upper and lower right side with down turning toes on the right foot.  For the purposes of Worker's Compensation, Dr. Greenberg gave plaintiff a 5% impairment for loss of the use of his hands and a 15% impairment to plaintiff's lower back, for a total body impairment rating of only 20%.  (Tr. 326-327).  X-rays taken on this date revealed minimal osteoarthritis in the SI and hip joints.  (Tr. 328).

Further, a functional capacity evaluation conducted in April 2005 showed that plaintiff could occasionally walk, balance, kneel, climb stairs, and carry up to 40 pounds, as well as use his fingers for grasping and handling.  Based on this assessment, Dr. Greenberg concluded that plaintiff could perform work-related activities on a light level.  Dr. Greenberg later filed an addendum noting that he had spoken with plaintiff's worker's compensation case manager and that plaintiff had elected to participate in vocational rehabilitation because he was unable to return to his previous job building bridges.  (Tr. 325).  He also indicated that plaintiff would require the use of Mobic and Darvocet N for the next 6 to 12 months.  (Tr. 325).

Following an appointment with Dr. Capocelli in May 2005, there are no further medical records contained in the transcript.  This leads us to believe that plaintiff's condition was no longer severe enough to warrant medical intervention.  In fact, at the time of the administrative hearing, in June 2006, plaintiff testified that he was no longer taking prescription pain medication on a daily basis.  (Tr. 401-402).  *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir.

1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). Instead, plaintiff used Tylenol and Ibuprofen. (Tr. 401). *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability).

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. The record contains plaintiff's admissions that he is able to watch TV, feed pets, walk on a treadmill, read, drive, pay bills, visit friends and/or family members, and attend church 3 times per week. (Tr. 68, 71-72). At the administrative hearing, plaintiff testified that he cared for his children, ages 1 and 3, during the day while his wife worked. (Tr. 399-400). Dr. Greenberg also noted that plaintiff had elected to enroll in a work rehabilitation program in April 2004. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, this level of activity is inconsistent with a finding of disability.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. *See*

14

*Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

**B.** **Failure to Develop the Record**:

Although plaintiff contends that the ALJ failed to properly develop the record, we do not agree. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (2006). In this matter, however, the record contains ample objective, as well as subjective support for the ALJ's decision.

Plaintiff alleges that the ALJ should have sought clarification of Dr. Greenberg's notation that plaintiff could return to light work. We note, however, that Dr. Greenberg was forwarded an RFC assessment, on which he stated that plaintiff could perform light work in accordance with the FCE. As the FCE is in the file, we see no need for further clarification.

**C.** **RFC Assessment**:

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts*

*v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  The United States Court of Appeals for the Eighth

Circuit has also stated that a "claimant's residual functional capacity is a medical question,"

*Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v.*

*Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the

plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's

"ability to function in the workplace."  *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000).

Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited

to considering medical evidence, an ALJ is required to consider at least some supporting

evidence from a professional.  *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health*

*and Human Servs*., 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical

question,"and medical evidence was required to establish how claimant's heart attacks affected

his RFC).

        In the present case, the ALJ considered the medical assessment of a non-examining

agency medical consultant, plaintiff's subjective complaints, and his medical records.  On March

14, 2005, Dr. Jerry Thomas a non-examining physician, completed an RFC assessment.  (Tr.

303-311).  After reviewing plaintiff's medical records, he determined that plaintiff could perform

light work.  However, he also determined that plaintiff had a limited capacity to perform fine and

gross manipulation and should avoid rapid, repetitive motion of either wrist. (Tr. 304).

        Plaintiff contends that Dr. Thomas' assessment establishes the fact that he continued to

have problems with his hands, even after his carpal tunnel surgery.  We note, however, that the

opinion of a non-examining consultant is not entitled to substantial weight.  *See Jenkins v. Apfel*,

196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who

16

examined the plaintiff once or not at all does not generally constitute substantial evidence).  This is especially true, in the present case, where an FCE has shown that plaintiff has no limitations in his hands and wrists.  Further, the additional indicates that plaintiff was able to care for a 1 and 3-year-old child on a daily basis while his wife was away at work, as well as load the dishwasher daily, play on the playstation, and perform woodwork.  (Tr. 89, 91).  Clearly, these are all activities that require the use of your hands and wrists.

Likewise, plaintiff contends that the ALJ erred by failing to fully incorporate his walking limitations into her RFC.  Here again, the evidence presented shows that the doctors encouraged plaintiff to walk and to continue exercising, and plaintiff testified that he was doing so on a daily basis.  Plaintiff also stated that could care for his small children while his wife was away at work, as well as walk 3 miles before requiring a 15 minute break.  (Tr. 73, 92).  In April 2004, Dr. Greenberg even indicated that plaintiff had opted to participate in vocational rehabilitation.

**D.**   **Return to Work**:

We also find that substantial evidence supports the ALJ's finding that plaintiff can still perform work that exists in significant numbers in the national economy.  When presented with the ALJ's hypothetical question involving a claimant of the same age, educational and vocational background as plaintiff, who could perform light work, limited by an ability to occasionally climb, bend, twist, crouch, kneel, or balance; an inability to climb ladders, ropes, or scaffolds; and, the need for a sit/stand option allowing him to switch positions after 45 minutes of a continuous single activity, the vocational expert testified that the individual would still be able to perform work as a service dispatcher, machine tenderer, and cashier II.  (Tr. 207-213).  *See*

17

*Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

      E.    **Dictionary of Occupational Titles ("DOT")**:

The plaintiff contends that the expert's testimony is contradicted by the DOT. The plaintiff is correct in stating that "an ALJ cannot rely on expert testimony that conflicts with the job classifications in the [Dictionary of Occupational Titles] unless there is evidence in the record to rebut those classifications." *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003). However, in this case, we do not see a conflict between the expert's testimony and plaintiff's RFC.

The position of service dispatcher, listing 959.167-010, is classified as sedentary work with a specific vocational preparation ("SVP") level of 4[2] requiring no climbing, balancing, stooping, kneeling, crawling or fingering, and only occasional reaching, and handling. As for the position of machine tenderer, the expert did not list one specific DOT number, rather he described a category. Our research reveals that there are a myriad of machine tender positions that are classified as light work with an SVP of 2,[3] the majority of which do not require climbing, balancing, stooping, kneeling, crouching, or crawling. *See e.g.*, DICTIONARY OF OCCUPATIONAL TITLES §§ 521.665-022, 521.685-018, 521.685-138, 524.685-030, 524.685-038, 525.685-014, 525.685-026, 556.685-022, 556.685-038, 556.685-062, 556.685-086, 574.665-010, *at* www.westlaw.com. The position of cashier II carries an SVP of 2 and is also classified as light

---

[2]A position with an SVP of 4 requires 3 to 6 months training to learn the job. DICTIONARY OF OCCUPATIONAL TITLES § 959.167-010, *at* www.westlaw.com.

[3]A position with an SVP level of 2 requires ob training of 1 month or less. *See generally*, DICTIONARY OF OCCUPATIONAL TITLES, *at* www. westlaw.com.

work requiring no climbing, balancing, stooping, kneeling, crouching, or crawling. DICTIONARY OF OCCUPATIONAL TITLES § 211.462-010, *at* www.westlaw.com.   Clearly, each of these positions fall well within plaintiff's RFC.

Plaintiff also argues that the vocational expert failed to identify plaintiff's transferrable skills. We disagree. At the hearing, the expert stated that plaintiff's transferrable skills consisted of knowledge of construction processes and materials, scheduling, and transportation.  It is clear from her testimony that these skills were acquired from plaintiff's past relevant work as a construction worker, heavy driver, and yard supervisor.  While the DOT does not speak on the question of computer training, we do believe it is reasonable to conclude that plaintiff could acquire the necessary computer/equipment skills to perform these jobs while working.  Nothing in the descriptions of these positions suggests otherwise.

Therefore, given the fact that the requirements of these positions coincide with the RFC assessment included in the hypothetical question propounded to the vocational expert, we conclude that substantial evidence supports the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**V.**   <u>**Conclusion**</u>**:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may**

19

result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 22nd day of January 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

20